IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUANE GIANCONE,                          )   Civil No. 3:12-cv-00495-JE
                                         )
                Plaintiff,               )
                                         )   OPINION AND ORDER
        v.                               )
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
                Defendant.               )
_____)

Bruce W. Brewer
Law Offices of Bruce W. Brewer, PC
PO Box 421
West Linn, OR 97068

        Attorney for Plaintiff


S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Brett Edward Eckelberg
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Duane Giancone brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying his application for Disability Income Benefits (DIB) under the Social Security Act (the

Act).  Plaintiff seeks an Order remanding the action to the Social Security Administration (the

Agency) for an award of benefits.

The Commissioner concedes that the ALJ's decision included significant errors, and asks

that the action be remanded for further proceedings.

For the reasons set out below, the Commissioner's is reversed and remanded for an award

of benefits.

## Procedural Background

Plaintiff filed an application for DIB on June 1, 2009, alleging that he had been disabled

since February 12, 2009.

After his claim had been denied initially and on reconsideration, Plaintiff timely

requested an administrative hearing.

On June 9, 2011, a hearing was held before Administrative Law Judge (ALJ) Rudolph

Murgo.  At the hearing, Plaintiff amended the date of his alleged onset of disability to July 16,

2009.  Plaintiff and Richard Keough, a Vocational Expert (VE), testified at the hearing.

In a decision filed on June 15, 2011, ALJ Mungo found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on January 21, 2012, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on November 23, 1957, and was 53 years old at the time of the ALJ's decision. He graduated from high school and has past relevant work experience as a wax molder. Throughout his 35 year work history, Plaintiff performed work that the VE characterized as medium exertional level and unskilled. He worked for his last employer, Precision Castparts, for 26 years.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

OPINION AND ORDER - 3

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

<u>Step Five</u>.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## **Medical Record**

Plaintiff's most significant medical problem is the development of advanced osteoarthritis in both knees. A treating physician has prescribed the use of a walker and cane, and a specialist has opined that the no treatment other than bilateral knee replacement would likely be effective.

## **Testimony**

### **Plaintiff**

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff was 5' 9" tall and weighed approximately 284 pounds. He struggled to get into his small automobile, but was able to drive and had driven to the hearing.

Plaintiff had dyslexia. He could read "some," and had "barely" graduated from high school.

Plaintiff had received unemployment benefits until a short time before the hearing. When he obtained job applications, he indicated that he was looking for part-time work because he could not stand for long periods. He thought he could work if the job allowed him to use a reclining position. Sitting was difficult because it caused pain.

Plaintiff had not worked since February, 2009, because of back pain, arthritis, and pain in his ankles. His doctor had prescribed a walker and a cane. Plaintiff used a cane every day, and with the assistance of his doctor had obtained a "disabled hunter" permit. He was in pain constantly. Plaintiff thought he could walk up to 25 yards, stopping about every 5 yards,

without a cane.  He had parked a block from the hearing location, and it had taken him about 15 minutes, using his cane, to walk that distance.

Plaintiff was able to shower "with help sometimes."  He and his wife shopped together, and Plaintiff rode "a little cart" in the grocery store.  Plaintiff did household chores for approximately 30 minutes every other week: He washed dishes approximately twice a month and took out the garbage.  He did not do laundry.  Plaintiff  usually stayed in bed until 10:00 or 11:00 a.m., and spent about half the day watching television from a recliner.  Other than reading the comics section of the newspaper, he did little else during the day.  Plaintiff took pain medication before going to bed, and stayed up until as late as 2:00 a.m. if his knees were particularly painful.

Plaintiff's doctor told him that the condition of his knees had worsened during the previous  two years, and that his knees were "nearly bone on bone." He would have liked to have knee surgery, but did not have insurance and could not afford that treatment.

Plaintiff sat for approximately an hour and a half during the  church services he attended weekly.  Sitting that long was "not fun."

**<u>Lay Witness Testimony</u>**

Caroline Valleur, Plaintiff's wife, completed a Third Party Function Report dated July 29, 2009, describing Plaintiff's activities and limitations as follows.

Plaintiff had difficulty walking or picking things up off the floor.  He spent most of his time watching television, and occasionally went out to visit friends or family or shop for groceries.  Plaintiff complained of waking up in pain.

Plaintiff could prepare frozen meals and "PB & J sandwiches."  Meal preparation took little time because he used a microwave.  He cleaned, vacuumed, and did laundry.  He performed these chores slowly, and shopped, slowly, once per week.  Plaintiff was able to pay bills, but

OPINION AND ORDER - 6

needed to use a "cheat sheet" because of his dyslexia.  Because of dyslexia, Plaintiff could not read, write, or follow written instructions well.  Severe back and leg pain made it difficult for Plaintiff to move about, and he could walk only 2 or 3 blocks without pausing to rest.

**Vocational Expert**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, experience, and education who could frequently lift 10 pounds and occasionally lift 20 pounds; stand/walk or sit for 6 hours during an 8 hour work day; frequently use ramps and stairs; frequently balance; occasionally climb ladders, ropes, scaffolds; and occasionally kneel, crouch, and crawl.

The VE testified that such an individual could not perform Plaintiff's past relevant work as wax molder, but could perform other jobs that existed in substantial numbers in the national economy.  As examples of such work, the VE cited cashier, document scanner, and electrical assembler jobs.

The ALJ then modified his hypothetical to add a sit/stand option, eliminate any ability to climb ladders, ropes, and scaffolds, allow only occasional use of stairs and ramps, and allow for only occasional balancing.  The VE testified that the described individual could work as a cashier, document scanner, or extruder, though the number of positions available would be reduced by the need for the sit/stand option.

The ALJ next added that the hypothetical individual needed to use a cane to ambulate. The VE testified that the use of a cane eliminated the ability to carry, but that the individual described could work as an extruder, document scanner, or small products assembler because these jobs required no carrying.  He also stated that his testimony was consistent with the Dictionary of Occupational Titles.

OPINION AND ORDER - 7

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 16, 2009, the amended date of his alleged onset of disability.

At the second step, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, arthritis, and obesity were severe impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the capacity to perform less than the full range of light work: He could occasionally lift up to 20 pounds and frequently lift up to 10 pounds; could never climb ladders, ropes, or scaffolds; could occasionally climb stairs and ramps; and could occasionally balance, stoop, kneel, crouch, or crawl.  Plaintiff needed to use a cane to ambulate, and needed to have an option to sit or stand.  The ALJ found that Plaintiff's  statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with this RFC assessment.

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as a wax molder.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in substantial numbers in the national economy.  He cited extruder, cashier, and document preparer/scanner jobs as examples of work Plaintiff could perform.  He noted that the Vocational Expert had testified that the cashier position was generally performed at a "modified sedentary or

light exertional level," that the work document preparer/scanner work was performed at the sedentary level, and that all of these jobs "allow for a sit or stand option." The ALJ added that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles."

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

<u>**Discussion**</u>

Plaintiff contends that the ALJ failed to properly assess his severe impairments at step two, erred in failing to find that his problems with ambulation satisfied the requirements of a presumptively disabling "Listing" at step three, erred in finding at step four that he could perform light exertional level work with a sit/stand option, erred in concluding that his testimony and third-party statements concerning his symptoms and limitations were not wholly credible, and erred in finding at step five that he could perform jobs that existed in substantial numbers in the national economy.

The Commissioner concedes that the ALJ erred in his assessment of Plaintiff's ability to ambulate, and that his evaluation at step three was deficient. She asserts that this action should be remanded to allow the ALJ to obtain "evidence from a medical expert to clarify the nature and severity of Plaintiff's impairment(s)" and to reevaluate whether the requirements of Listing 1.02 were satisfied "in light of the record as a whole."

A careful review of the ALJ's decision and the administrative record supports only the conclusion that the ALJ erred in concluding that Plaintiff is not disabled, and that this action should be reversed and remanded for an award of benefits. Because the ALJ's error at step three most obviously requires remand for an award of benefits, I will address it first, and will briefly address the other issues Plaintiff has raised in order to create a full record for any further review.

1. <u>**ALJ's Assessment of Disability Under the "Listings"**</u>

Substantial evidence supported Plaintiff's allegations that he experienced severe pain in his knees, could not stand and walk for sustained periods, and performed activities of daily life and work-related functions at far less than a normal pace. Medical evidence showed that Plaintiff's knees were significantly impaired by osteoarthritis, which had caused severe

narrowing of the joint spaces in both his knees and significantly reduced his ability to stand and walk. Imaging showed that Plaintiff's knees were essentially "bone to bone," and doctors opined that only bilateral knee replacement would likely improve his condition significantly. TR 297-98. Plaintiff's treating physician prescribed a cane and a walker and endorsed Plaintiff's application for a disabled hunter license.

As noted above, at the third step of his disability analysis, the ALJ found that, alone or in combination, Plaintiff's severe and non-severe impairments did not meet or equal a listed presumptively disabling condition. He specifically found that Plaintiff's impairments did not meet or equal Listing 1.02, which addresses the ability to ambulate, or Listing 1.04, which concerns motor loss, sensory loss, and reflex loss related to compromise of a nerve root or the spinal cord.

To satisfy Listing 1.02, Plaintiff needed to demonstrate major dysfunction of a joint. To establish that dysfunction, he needed to show that he had a "gross anatomical deformity" which caused chronic pain; stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s); medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s); and involvement of a major peripheral weight-bearing joint (i.e., hip, knee, or ankle) which resulted in an inability to ambulate effectively within the definition of 1.00(B)(2)(b). 20 C.F.R. 404, Subpart P, Appendix 1, §§ 1.00(B)(2)(b), 1.02.

Of these requirements, the Commissioner questions only Plaintiff's establishment of his inability to "ambulate effectively."

To ambulate effectively, an individual must be able to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. Examples of ineffective ambulation include the inability to walk without using a walker, two crutches or two

canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to carry out "routine ambulatory activities such as shopping;" the inability to walk at a reasonable pace over a sufficient distance to carry out activities of daily living, and the inability to climb a few steps with the use of a single hand rail.  Id.

 Plaintiff contends that the ALJ erred in concluding that he could "ambulate effectively" and therefore had not satisfied  the requirements of Listing 1.02.  I agree.  The record included substantial evidence, including unrebutted testimony, that Plaintiff could not shop without using a motorized cart, could not walk a block at a reasonable pace over any surface, and could not walk well enough to carry out his daily activities in anything approaching a normal manner.  The ALJ mentioned Plaintiff's use of a motorized cart for shopping, but did not explain how shopping while seated in such a device constitutes "ambulation" within the meaning of Listing 1.02.  He did not address Plaintiff's ability to walk on uneven surfaces, or comment on the pace at which he could walk as he performed his daily activities.

 The ALJ did not address the factors to be considered in assessing ambulation under Listing 1.02, and did not provide substantial support for his conclusion that Plaintiff could ambulate effectively.  As discussed below, the ALJ did not provide adequate reasons for rejecting  Plaintiff's and a third-party witness's corroborating statements concerning Plaintiff's ambulatory limitations.  Moreover, the ALJ did not address substantial evidence in the medical record supporting the conclusion that Plaintiff could not ambulate effectively within the meaning of Listing 1.02.

 The Commissioner asserts that "in relevant part, ineffective ambulation is defined generally as a person having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both*

upper extremities."  She contends that remand is needed "for the ALJ to reevaluate whether Plaintiff meets or equals [Listing 1.02] in light of the record as a whole," and proposes that on remand the ALJ "obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairment(s)."

These arguments fail for at least two reasons.  First, under Listing 1.02, ineffective ambulation is not "generally" defined by the necessity to use both upper extremities for ambulation.   Instead, the inability to walk without the aid of devices requiring the use of both upper extremities is listed as but one of several examples of ineffective ambulation.  Second, evidence from another medical expert is not needed to clarify "the nature and severity" of Plaintiff's ambulatory impairment, because evidence in the existing record already fully supports the conclusion that Plaintiff's bilateral knee impairment satisfies the requirements of Listing 1.02.

A claimant who meets the criteria for an impairment in the Listings has satisfied the requirements for establishing disability, and further analysis is not needed.  E.g., Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003).  The ALJ erred in concluding that Plaintiff did not satisfy the requirements of Listing 1.02.  Because Plaintiff met those requirements, remand to the Agency for an award of benefits is appropriate.

2. **Step Two Evaluation of Plaintiff's "Severe" Impairments**

The ALJ noted that Plaintiff had reported that he had dyslexia, and that the record showed that he had difficulty reading and writing.  He opined that, "even if" he had dyslexia, it was not a "severe" impairment because Plaintiff was able to "drive, shop, follow instructions, and read a newspaper," had graduated from high school, and had worked for many years.

Plaintiff contends that the ALJ erred at step two in failing to find that his dyslexia was a "severe" impairment.  I agree.

An impairment or combination of impairments is considered "severe" at step two if it significantly limits a claimant's ability to perform basic work activities.  SSR 96-3p.  An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to do such activities.  Id.  The "severe impairment" analysis is a "*de minimis* screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

In concluding that dyslexia was not a severe impairment for Plaintiff, the ALJ did not comment on the Agency's non-examining doctor's conclusion that Plaintiff had difficulty reading, writing and comprehending written material, or explain why the ability to drive or shop was either inconsistent with having dyslexia or showed that it was not a "severe" impairment "even if" Plaintiff was dyslexic.  His reliance on Plaintiff's ability to "read" the newspaper was misplaced, in that the only evidence in the record indicated that Plaintiff examined only the comic section.  Plaintiff's ability to perform a job for many years was not relevant in the absence of any showing that his unskilled position, which the ALJ found Plaintiff could no longer perform, required the ability to follow written instructions.  Though Plaintiff completed high school, Plaintiff's testimony that he "barely" graduated is not contradicted by evidence in the record.

The ALJ should have characterized Plaintiff's difficulty reading and writing as a severe impairment at step two, because significant limitation in the ability to read and write could be expected to more than minimally affect his ability to perform many jobs.  The failure to include dyslexia as a "severe" impairment was potentially prejudicial because this disorder could affect Plaintiff's ability  to perform "other work" at step five.

3. <u>**Sit/Stand Option and Plaintiff's Ability to Perform Work Functions**</u>

Plaintiff contends that the ALJ erred in concluding that he could perform light work that provided a sit/stand option without specifying the amount of time he "can sit before he needs to stand and how long he can stand before he needs to sit."   He contends that the ALJ was required to provide this information to the VE, because most unskilled work does not allow a sit/stand option.

I am satisfied that the ALJ erred in finding that Plaintiff could stand and walk for six hours during an eight hour work day as required to perform light exertional level work and erred in concluding that Plaintiff could perform "other work" at step five.  However, in restricting Plaintiff to work providing a sit/stand option, the ALJ was not required to specify the amount of time that Plaintiff needed to be allowed to sit or required to stand.  According to SSR 83-12, an individual who needs a sit/stand option is not capable of the "prolonged walking" required by <u>most</u> light work.  However, SSR 83-12 does not state that a sit/stand option is inconsistent with <u>all</u> light work.  Instead, it recommends that, where a claimant has "an unusual limitation in the ability to sit and stand," a VE should be consulted.  <u>See</u> <u>Delores v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991) (where claimant must alternate between periods of siting and standing, ALJ directed to consult VE).  That is what the ALJ did here.  In the context of their dialogue, it appears that both the ALJ and the VE interpreted the sit/stand option required by the ALJ's RFC to allow Plaintiff to change positions at will.  Under those circumstances, though the VE's testimony might be  useful in determining whether particular jobs permitted a sit/stand option, establishing the amount of time spent in each position was not important.

The ALJ's finding that Plaintiff could stand/walk for 6 hours during an 8 hour work day as was required to perform light exertional level work was far more important than the failure to

specify the division of time between sitting and standing under a sit/stand option. The record simply would not support the conclusion that, despite his severe limitations in ambulation, Plaintiff had the capacity to stand and walk as required to perform light work. In the absence of that functional capacity, Plaintiff should have been restricted to sedentary work. As discussed below, that restriction would have required a finding of disability under the "grids."

4. **ALJ"s Credibility Determinations**

 **Plaintiff's Testimony**

Where, as here, a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

As noted above, Plaintiff testified that his knee impairment caused constant pain, severely limited his ability to stand and walk, and caused him to spend most of his time in a recliner. Given the objective medical evidence of severe osteoarthritis in Plaintiff's knees, Plaintiff's testimony, if accepted, was sufficient to establish disability at step three.

The ALJ provided several reasons for finding that Plaintiff was not wholly credible. He cited Plaintiff's failure to obtain medical treatment including "emergency care," failure to lose weight, failure to exercise, "minimal objective medical evidence" supporting Plaintiff's allegations, absence of evidence that Plaintiff was "totally" dependent on an assistive device for ambulation before May, 2011, Plaintiff's ability to carry out activities of daily living and to sit in church for an hour and a half, Plaintiff's ability to shoot a rifle, Plaintiff's receipt of

unemployment compensation after he stopped working, Plaintiff's ability to take a trip to

Mexico, and evidence that Plaintiff had lost his job because of conflict with co-workers.

Plaintiff contends that these are not legally sufficient "clear and convincing" reasons for

discounting his credibility.  I agree.  In the absence of evidence that Plaintiff had the insurance or

financial resources needed to pay for knee replacement surgery, the only treatment that doctors

thought would be effective, Plaintiff's failure to obtain further treatment does not undermine his

testimony concerning the severity of his pain and limitations.  See Smolen, 80 F.3d at 1284

(claimant's failure to seek treatment cannot afford not proper basis for discounting credibility).

Moreover, Plaintiff's failure to seek "emergency care" is not probative because there is no

showing in the medical record that Plaintiff's problems with ambulation would benefit from

emergency treatment, or that the chronic pain associated with Plaintiff's impairments could not

be reasonably addressed by less costly treatment.  See Orn v. Astrue, 495 F.3d 625, 638 (9ᵗʰ Cir.

2007) (where treatment not likely successful, failure to seek treatment not probative of

credibility).  Though the ALJ faulted  Plaintiff's apparent failure to "engage in any type of

exercise or change his diet," he acknowledged that pain made his limited ability to exercise

"understandable."  Plaintiff's failure to lose weight could provide a legitimate basis on which to

discount his credibility only if the recommendation that he do so was part of a prescribed

treatment which would likely remedy Plaintiff's impairment.  See id. at 637.  The record here

establishes neither of these conditions.

The other reasons the ALJ provided for discounting Plaintiff's credibility are no more

persuasive.  Plaintiff's ability to perform certain activities of daily living was not inconsistent

with his testimony, or with third-party statements, indicating that he carried out these activities at

a very slow pace.  Nothing in Plaintiff's ability to drive, discharge a firearm, or sit

uncomfortably through a lengthy church service was inconsistent with the level of pain and impairment he alleged.  Because the functional capacity required to travel depends on the nature of the trip, the mere fact that Plaintiff traveled to Mexico after the alleged onset of his disability is not a proper basis for discounting Plaintiff's credibility.  In the absence of evidence that a claimant asserted that he was available for full-time work, receipt of unemployment compensation after the alleged onset of disability is not a basis for discounting credibility.  Carmickle v. Commissioner, 533 F.3d 1155, 1161-62 (9th Cir. 2008).  Here, Plaintiff testified that he had sought only part-time work, and the ALJ made no contrary finding.  Moreover, the circumstances under which Plaintiff had stopped working for Precision Castparts are not relevant, given that the ALJ's own assessment of his functional capacity precluded performance of the medium level work that he had performed for that employer.

Finally, the ALJ's assertion that only "minimal objective medical evidence" supported Plaintiff's testimony is not accurate.  As noted above, objective medical evidence established that osteoarthritis in Plaintiff's knees had advanced to the point that Plaintiff needed knee replacement surgery.  That evidence supported Plaintiff's testimony as to the debilitating severity of his pain and ambulatory limitations.

**Lay Witness Statement**

The ALJ cited the portions of a third-party witness statement in which Plaintiff's wife indicated that Plaintiff was a "very social person" who was able to attend to his personal care needs, shop, prepare simple meals and perform other household tasks, drive and ride a motorcycle, fish and hunt, and walk two to three blocks.  He characterized these statements as "generally consistent with the record" and with his assessment of Plaintiff's residual functional capacity.

This characterization of the third-party witness statement is not wholly accurate because it omits and mischaracterizes significant portions of the third-party statement.  Though she did indicate that Plaintiff performed a number of household chores, Plaintiff's wife reported that he did so slowly, shopped slowly, spent most of his time watching television, and appeared to be in pain most of the time.  She also reported that Plaintiff needed to use a "cheat sheet" when paying bills.

An ALJ must provide reasons that are "germane" for rejecting lay witness testimony. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  The ALJ here silently rejected much of the third-party witness statement without providing a basis for doing so.

5. **ALJ's Analysis at Step Five**

Plaintiff correctly notes that, based upon his age, education, past relevant work experience, and absence of transferable skills, Plaintiff would be disabled under the "grids" if he were limited to sedentary work.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14 (claimant disabled if cannot perform past relevant work, has high school education, is closely approaching advanced age, lacks transferable skills).  He argues that the ALJ erred in relying on his purported ability to perform sedentary work as a document scanner at step five because he was "disabled on the sedentary grid given his age, education and past relevant work experience."

If the ALJ had found that Plaintiff was limited to only sedentary work, this argument would be well-taken.  However, the ALJ did not find that Plaintiff could perform only sedentary work, but instead found that Plaintiff could perform less than the full range of light work.  The ability to perform light work necessarily includes the ability to perform sedentary work unless additional limitations not present here, such as a claimant's loss of fine dexterity or an inability to sit for prolonged periods, preclude performance of sedentary work.  See Blacknell v. Heckler,

721 F.2d 1179, 1180 (9th Cir. 1983) (per curiam) (citing 20 C.F.R § 404.1567(b)).  Therefore, if his conclusion that Plaintiff could perform a limited range of light exertional level work had been correct, the ALJ could have properly found that Plaintiff was capable of performing a sedentary job.

The ALJ nevertheless erred at the fifth step for other reasons.  In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations.  E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value.  Gallant, 753 F.3d at 1456.

Here, the ALJ's vocational hypothetical included a finding that Plaintiff could perform light work, which required the capacity to stand/walk for 6 hours during an 8 hour workday. That conclusion was not supported by substantial evidence in the record, and was based upon a rejection of Plaintiff's testimony that was not legally sufficient.  Under these circumstances, the VE's testimony that Plaintiff could perform specified light duty jobs lacked evidentiary value.

As noted above, the ALJ included Plaintiff's need to use a cane in his RFC assessment. The VE testified that use of a cane precluded the ability to carry, and further testified that the document scanner, cashier, and extruder jobs he identified as consistent with the vocational hypothetical required no carrying.  The Dictionary of Occupational Titles (DOT), however, indicates that "light" work requires the ability to lift and carry 20 pounds 1/3 of the workday and 10 pounds 2/3 of the workday.  The DOT does not except the light exertional level extruder and cashier positions from this requirement.

The VE neither explained the basis for his assertion that the extruder and cashier position required no carrying, nor provided any explanation for the divergence between this assertion and the requirements set out in the DOT.  In the absence of such an explanation, the ALJ erred in relying on the VE's testimony.  See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (ALJ must identify conflicts between VE testimony and DOT;  obtain explanation for any conflict; and explain how conflict resolved).

The Commissioner failed to meet the burden of establishing, at step five, that Plaintiff could perform "other work."  The record is complete, and remand for an award of benefits is appropriate.

## **Conclusion**

For the reasons set out above, the Commissioner's decision denying Plaintiff's application for Disability Insurance Benefits is REVERSED and this action is REMANDED to the Agency for an award of benefits.

DATED this 26th day of August, 2013.

_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge